# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DIANNA BRIGGS, | ) | CASE NOS.: 1:16CR176 |
| | ) | 1:17CV1874 |
| Petitioner, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| UNITED STATES OF AMERICA, | ) | **ORDER** |
| | ) | (Resolves Docs. 70, 95, and 96 for |
| Respondent. | ) | 1:16CR176) |

This matter is before the Court on Petitioner Dianna Briggs' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (Pet'r's Mot. to Vacate, ECF No. 70.) In addition to her original motion, Petitioner filed three supplemental memoranda in support of her Motion to Vacate. (Pet'r's Suppl. Mem., ECF No. 88; Pet'r's Second Suppl. Mem., ECF No. 89; Pet'r's Third Suppl. Mem., ECF No. 92.)

Respondent filed a Response in Opposition to Petitioner's Motion to Vacate, to which Petitioner filed a Reply. (Resp't's Resp. in Opp'n to Pet'r's Mot. to Vacate, ECF No. 91; Pet'r's Reply, ECF No. 93.) Subsequent to her Reply, Petitioner filed an Urgent Motion for Leave to Supplement her original Motion to Vacate and a Motion for Ruling. (Pet'r's Urgent Mot. for Leave to Suppl., ECF No. 95; Pet'r's Mot. for Ruling, ECF No. 96.)

In addition to the motion practice surrounding Petitioner's Motion to Vacate, Petitioner also filed a Motion to Grant Jail Credit, to which Respondent responded. (Pet'r's Mot. to Grant Jail Credit, ECF No. 74; Resp't's Resp. in Opp'n to Pet'r's Mot. to Grant Jail Credit, ECF No. 80.) This Court denied Petitioner's Motion to Grant Jail Credit. (Order Den. Pet'r's Mot. to Grant Jail Credit, ECF No. 86.)

For the following reasons, this Court DENIES Petitioner's Motion to Vacate, and DENIES Petitioner's Urgent Motion for Leave to Supplement her original Motion to Vacate. Also, in addressing Petitioner's continued discontent regarding jail credit, this Court reiterates its DENIAL of Petitioner's Motion to Grant Jail Credit. This Order renders Petitioner's Motion for Ruling MOOT.

## I. FACTUAL BACKGROUND

On May 25, 2016, a federal Grand Jury indicted Petitioner for Conspiracy to Commit Mail Fraud, Wire Fraud, and Bank Fraud in violation of 18 U.S.C. § 1349 and Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(a)(1). (Indictment 5-21, ECF No. 1.) Petitioner was arrested December 20, 2016 in the District of Hawaii and was released on bond December 23, 2016. (*See generally* Rule 5(c)(3) Docs., ECF No. 20 and associated docket text.)

On January 10, 2017, Petitioner appeared before this Court for arraignment and remained released on bond pending a detention hearing. (Min.1/10/2017.) Petitioner's first detention hearing, held January 12, 2017, was ultimately continued until January 23, 2017. (Min. 1/13/2017. *See also* Tr. of 1/12/2017 Detention Hr'g 3:3-6; 4:15-19; 7:7-8:4, ECF No. 78.) During the January 12, 2017 detention hearing, counsel for the government stated that they had discovery material prepared for Petitioner's counsel and that a meeting was scheduled between Petitioner's counsel and counsel for the government to review evidence; Petitioner's counsel agreed with counsel for the government's statement regarding the status of the case at that time. (Tr. of 1/12/2017 Detention Hr'g 6:2-15; 6:18-23, ECF No. 78.)

Between the January 12, 2017 detention hearing and the January 23, 2017 detention hearing, Petitioner remained released on bond. (Min. 1/13/2017. *See also* Tr. of 1/23/2017 Detention Hr'g 10:1-3, ECF No. 75.) Petitioner's second detention hearing, held January 23, 2017, was also

continued until January 25, 2017, as Petitioner indicated she wished to change her plea. (Min. 1/23/2017. *See also* Tr. of 1/23/2017 Detention Hr'g 2:2-5; 8:9-11; 9:8-12; 9:15-21, ECF No. 75.) During the January 23, 2017 hearing, this Court was informed that the government, Petitioner, and Petitioner's counsel had been involved in active plea negotiations and consistent communication regarding the case. (Tr. of 1/23/2017 Detention Hr'g 2:15-3:16; 5:17-24, ECF No. 75.)

On January 25, 2017, Petitioner entered into a written plea agreement for both counts against her and attended a change of plea hearing. (Plea Agreement, ECF. No. 23; Min. 1/26/2017. *See also* Tr. of Change of Plea Hr'g 2:2-5, ECF No. 76.) During the change of plea hearing, Petitioner was placed under oath and engaged in a plea colloquy with this Court. (Tr. of Change of Plea Hr'g 3:20-4:6, ECF No. 76.) At the beginning of the plea colloquy, this Court instructed Petitioner that should she have any issues or questions to interrupt the proceedings. (*Id.* at 4:16-21.)

During the plea colloquy Petitioner affirmed to this Court that she was not under the influence of any substance that would affect her ability to understand the hearing, that she fully reviewed the indictment against her with her attorney, that she understood the charges against her, that she had plenty of time to discuss and review her possible defenses and all matters related to her case with her attorney, and that she was satisfied with her attorney's performance. (*Id.* at 4:25-5:22.)

Once satisfied that Petitioner understood the charges she faced, this Court thoroughly reviewed Petitioner's plea agreement with her and she agreed that she had fully read and reviewed her written plea agreement before signing it, that she fully discussed her written plea agreement with her attorney before signing it, and that she fully understood the terms of her written plea agreement. (*Id.* at 6:12-17:2.) This Court also reviewed with Petitioner the rights she was waiving by entering a guilty plea, including her presumption of innocence, the right to subpoena witnesses, the right to cross examine witnesses, the right not to testify, the right to counsel, and the government's burden

of proof. (*Id.* at 6:1-6; 19:23-23:13.) This Court also reviewed with Petitioner the consequences of her guilty plea including the possible length of sentence, fines, restitution, special assessments, and supervised release. (*Id.* at 8:1-10:21; 11:10-16:17.)

Petitioner admitted understanding that she could not withdraw her guilty plea should she be dissatisfied with the sentence imposed by this Court and she affirmed that no one had made any promises to her, threats against her, or attempted to persuade her to sign the written plea agreement. (*Id.* at 7:14-21.)

Petitioner's written plea agreement, signed by Petitioner, includes a lengthy recitation of the factual evidence the government compiled regarding Petitioner's involvement in a sophisticated fraud scheme and Petitioner's acknowledgement that the factual evidence accurately set forth Petitioner's illegal conduct and the basis for her guilty plea. (Plea Agreement 10, 14-30, ECF No. 23.) When this Court sought to determine the factual basis for Petitioner's guilty plea, Petitioner stated, under oath, that she carefully and thoroughly reviewed the factual materials supporting the government's case against her, that she understood the factual material, and that she admitted to engaging in the illegal activity as written in her plea agreement. (Tr. of Change of Plea Hr'g at 23:17-24:17.) When asked by this Court whether she had any questions relating to her plea, Petitioner stated that she did not. (*Id.* at 23:14-15; 24:25-25:2.)

After the lengthy and thorough exchange between Petitioner and this Court, in which Petitioner consistently and coherently stated under oath that she did not have any questions or concerns and that she understood her rights and wished to waive them, Petitioner entered her guilty plea, and this Court accepted it with a finding that Petitioner was competent and entered an informed, knowing, and voluntary plea. (*Id.* at 25:3-18.) On January 25, 2017, after Petitioner entered her

guilty plea, this Court allowed Petitioner to remain released on bond to the Western District of Tennessee. (Min. 1/26/2017. *See also* Tr. of Change of Plea Hr'g 29:4-11, ECF No. 76.)

On July 19, 2017, Petitioner attended her sentencing hearing. (Tr. Sentencing Hr'g 3:3-6, ECF No. 77.) During the sentencing hearing, counsel for the government spoke at length regarding Petitioner's active engagement with plea negotiations and her ability to provide "useful and specific" details to the government concerning the conspiracy in which she was involved. (*Id.* at 6:9-7:13.) Counsel for Petitioner agreed with the statements of government's counsel regarding Petitioner's cooperation with plea negotiations and providing assistance to the government. (*Id.* at 9:4-14.)

Because Petitioner accepted responsibility for her illegal conduct and cooperated meaningfully with the government to provide information concerning the conspiracy in which she was involved, Petitioner's written plea agreement contained sentencing guideline reduction computations. (Plea Agreement 5-7, ECF. No. 23. *See also* Tr. Sentencing Hr'g 9:18-24, ECF No. 77 (where the Court accepted the request to provide Petitioner with a four-level downward sentencing departure for substantial assistance to the government).)

During the sentencing hearing, Petitioner's counsel also noted for the record that Petitioner suffers from mental health issues, but that her mental health is managed with medication and counseling. (Tr. Sentencing Hr'g 11:6-12:4, ECF No. 77.) Counsel for Petitioner also indicated that Petitioner complained of experiencing auditory and visual hallucinations in April 2017, a few months before her sentencing hearing. (*Id.* at 11:15-25. *See also* Sentencing Mem. Ex. G, ECF No. 57-7 ("On March 30, 2017 Ms. Briggs reported feeling very depressed and having been experiencing visual and auditory hallucinations as well as paranoid thoughts ***in the last 4 weeks***.

She was having suicidal thoughts at times. . . . She called the Kaiser Behavioral Health Care Member Help Line on April 1, 2017 expressing intense suicidal ideation.") (***emphasis added***).)

Prior to this Court deciding her sentence, Petitioner made a statement on her own behalf where she apologized for her behavior, stated that she was prepared to accept her punishment, and indicated that she wanted to work toward being a better person. (Tr. Sentencing Hr'g 13:13-21, ECF No. 77.)

Ultimately, on July 19, 2017, this Court sentenced Petitioner to the custody of the United States Bureau of Prisons for 37 months as to Count 1 against her and 24 months as to Count 3 against her to run consecutive, for a total of 64 months. (J. 1-2, ECF No. 62. *See also* Tr. Sentencing Hr'g 21:2-13, ECF No. 77.)

On September 6, 2017, Petitioner filed her Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, followed by the subsequent motion practice as outlined *supra*.

## II.  STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a prisoner "may move the court which imposed the sentence [against her] to vacate, set aside, or correct the sentence." 28 U.S.C.S. § 2255(a) (LexisNexis 2018). In order for the prisoner to obtain relief under 28 U.S.C. § 2255, she "must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001) (internal quotation marks omitted)).

In the instant matter, Petitioner provided four grounds for relief pursuant to 28 U.S.C. § 2255 in her Motion to Vacate: (1) "erroneous advice to take a plea without investigating discovery materials"; (2) "extraordinary efforts by counsel at plea hearing to elicit [sic] an admission of

guilty"; (3) "failure to investigate my competency before doing a plea"; and (4) "failure to understand the consequences of withdrawing a plea." (Pet'r's Mot. to Vacate 4-5, ECF No. 70.) Each ground for relief, as stated by Petitioner, along with the supporting facts Petitioner provided in her Motion to Vacate, indicate that Petitioner is alleging an error of constitutional magnitude in the form of ineffective assistance of counsel as her basis for relief pursuant to 28 U.S.C. § 2255. (*Id.*)

## III.  LEGAL ANALYSIS

### A.  Ineffective Assistance of Counsel

In order for Petitioner to demonstrate that her counsel's assistance was so defective that justice requires her sentence to be vacated, set aside, or corrected, she must prove two components. First, Petitioner "must show that counsel's performance was deficient," which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, Petitioner "must show that the deficient performance prejudiced" her. *Id.* Both components must be proved, otherwise it cannot be stated that there was a "breakdown in the adversary process that renders the result unreliable." *Id.*

For the first component, "the proper standard for attorney performance is that of reasonably effective assistance." *Id.* Therefore, to be deemed deficient, counsel's representation of Petitioner must have fallen below an "objective standard of reasonableness." *Id.* at 688. In other words, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.*

When analyzing counsel's performance under this objective reasonableness standard, the "inquiry must be whether counsel's assistance was reasonable considering all the circumstances."

*Id.* Which means that counsel's conduct must have been reasonable given "the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

Furthermore, "[j]udicial scrutiny of counsel's performance must be highly deferential" and every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Because of the difficulties associated with this hindsight analysis, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 689-90.

For the second component, Petitioner must demonstrate that counsel's deficient performance prejudiced her. This means that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Therefore, Petitioner must do more than simply show that her counsel's "errors had some conceivable effect on the outcome of the proceeding" because then "[v]irtually every act or omission of counsel would meet that test . . . and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693. Petitioner is required, therefore, to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," where "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

To be clear, in the instant matter Petitioner is requesting that her sentence be vacated, set aside, or corrected because she believes her counsel was ineffective with respect to plea negotiations and

with issues surrounding Petitioner's guilty plea. (Pet'r's Mot. to Vacate 4-5, ECF No. 70.) "The constitutional right to counsel 'extends to the plea-bargaining process.'" *Ugochukwu v. United States*, No. 17-3073, 2018 U.S. App. LEXIS 10756, at *3 (6th Cir. Apr. 26, 2018) (quoting *Lafler v. Cooper*, 566 U.S. 156, 162 (2012)). Therefore, Petitioner must demonstrate that her counsel's performance during the plea-bargaining process, while she entered her guilty plea, and during the remainder of counsel's representation of Petitioner was objectively, professionally unreasonable given the facts and circumstances of Petitioner's case **_and_** that there is a reasonable probability that but for her counsel's objectively, professionally unreasonable performance, she would not have entered a guilty plea. *See id.* (quoting *Lafler v. Cooper*, 566 U.S. 156, 163 (2012), which states that Petitioner "'must show [that] the outcome of the plea process would have been different with competent advice'").

1. *Ground One – Failure to Investigate Discovery Materials and Providing Erroneous Advice*

In her Motion to Vacate, Petitioner states that her first ground for relief is that her counsel was constitutionally ineffective because he provided her "erroneous advice, to take a plea without investigating discovery materials." (Pet'r's Mot. to Vacate 4, ECF No. 70.) In support of this ground, Petitioner states that her counsel pressured her to "take a plea" on the same day that her counsel received discovery. (*Id.*) Breaking this down, it is reasonable to infer that Petitioner is alleging, in her first ground for relief, that her counsel was ineffective because he: (1) failed to investigate discovery material; and (2) pressured her to plead guilty.

a. Failure to investigate discovery material

With respect to Petitioner's allegation that her counsel was ineffective for failing to investigate discovery materials, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary" and "a particular decision not to

investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland v. Washington*, 466 U.S. 668, 691 (1984).

A decision to limit investigations may be considered objectively, professionally reasonable when the decision is supported by strategic considerations. *See Rompilla v. Beard*, 545 U.S. 374, 383 (2005) ("the duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste."); *Wiggins v. Smith*, 539 U.S. 510, 525 (2003) (explaining that counsel's decision to limit investigations may be reasonable if counsel has evidence that further investigation would be fruitless); *Strickland v. Washington*, 466 U.S. 668, 699 (1984) (supporting the proposition that counsel's decision to limit investigations does not constitute deficient performance when "counsel could reasonable surmise" that additional investigation "would be of little help").

In the instant matter, Petitioner asserts only conclusory statements devoid of evidentiary support with respect to her allegation that her counsel failed to investigate discovery material. Quite simply, Petitioner's only statements in support of this ground for relief are found in her first supplemental memorandum, where she states that her counsel "failed to review or investigate the governments [sic] discovery materials . . . ." (Pet'r's Suppl. Mem. 2, ECF No. 88. *See also* Pet'r's Suppl. Mem. 3, ECF No. 88, stating that her "attorney failed to make any investigation whatsoever into the purported discovery produced by the government . . . .".)

In contradiction to this conclusory assertion, Petitioner's counsel testified with specificity through an affidavit that he received discovery material from the government, met with Petitioner to discuss the discovery he received, attending a meeting between Petitioner and the government

to review the discovery, reviewed the discovery materials again on his own, spoke at length with Petitioner regarding the discovery materials, answered all of Petitioner's questions regarding the discovery materials and her legal options, and followed Petitioner's request to move forward with plea negotiations and negotiating Petitioner's plea agreement. (Thomarios Aff. ¶¶ 7-12, ECF No. 91-1.)

In response to this testimony, Petitioner admitted that her attorney reviewed the discovery materials, but then attempted to argue that the review was not sufficient by stating: "Surely; [sic] the weekend [my attorney] spent reviewing discovery, not even a business day, interspersed with a phone call and meeting, constituted inadequate investigation of the discovery." (Pet'r's Reply 8, ECF No. 93.)

Even without Petitioner's contradictory statements, the record on this matter is clear. Mere days after Petitioner's arraignment, a meeting to provide and review discovery material was scheduled between counsel for the government and Petitioner's counsel. Shortly thereafter, Petitioner and her counsel engaged in conversations, discovery review, and plea negotiations with counsel for the government. During the plea colloquy in which Petitioner and this Court engaged, Petitioner admitted, under oath, that she reviewed all the various matters related to her case with her attorney, that she had plenty of time to do so, and that she was satisfied with the representation of her counsel. Despite this Court instructing Petitioner to interrupt the proceedings should she have any questions or need to raise any issues, Petitioner never raised any concerns regarding her counsel's alleged failure to review discovery materials.

Consequently, the record is devoid of evidence that Petitioner's counsel failed in his duty to make reasonable investigations or that Petitioner's counsel unreasonably decided to limit investigations into the discovery material counsel for the government provided him. Therefore,

given the circumstances of Petitioner's case and taking into consideration the entirety of the record before it, this Court finds that Petitioner cannot prove that her counsel's performance, with respect to investigating discovery materials was objectively, professionally unreasonable. Accordingly, there is no reason to analyze whether, but for Petitioner's counsel's deficient performance, Petitioner still would have entered a guilty plea.

Petitioner has not demonstrated that her counsel was ineffective by failing to investigate discovery materials.

b. Pressure to plead guilty

A guilty plea is valid so long as it is entered voluntarily and intelligently. *Bousley v. United States*, 523 U.S. 614, 618 (1998) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). In order to ensure that a guilty plea is entered voluntarily and intelligently, a district court must, in accordance with Rule 11 of the Federal Rules of Criminal Procedure, verify that the pleading party "understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007) (quoting *United States v. Webb*, 403 F.3d 373, 378-79 (6th Cir. 2005) (internal quotation marks omitted)). When engaging in this plea colloquy with the court, as required by Rule 11 of the Federal Rules of Criminal Procedure, a defendant is bound by the statements she made in response to the court's inquiry, so long as the court "scrupulously followed the required procedure." *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (relying upon *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976); *Jackson v. United States*, 512 F.2d 772, 773 (5th Cir. 1975)).

To support her claim that her counsel was ineffective because he improperly pressured her to plead guilty, Petitioner again supplies only conclusory allegations unsupported by evidence. Once

again, Petitioner's only statement in support of this ground for relief is found in her first supplemental memorandum, where she asserts that her counsel "pressured her to sign the first plea deal offered by the government [] with no negotiation whatsoever . . ." (Pet'r's Suppl. Mem. 2, ECF No. 88.) Petitioner spends some time in her Reply reiterating that her counsel threatened, coerced, and pressured her to plea guilty, but again, she only provides conclusory statements, and she fails to provide any evidence in support of her statements. (Pet'r's Reply 8-10, ECF No. 93.)

Once again, despite Petitioner's allegations, the record on this matter is clear – Petitioner entered a voluntary and intelligent guilty plea that was uncoerced. This Court entered into a lengthy and detailed plea colloquy with Petitioner to ensure that her plea was voluntary and intelligent. Petitioner testified, under oath, that she understood the nature of the charges against her, that she fully understood the written plea agreement she entered into, that she understood the constitutional rights she wished to waive by entering a guilty plea, that she understood the consequences of entering a guilty plea, and that she did not dispute the extensive and detailed factual basis, provided by the government, supporting her guilty plea. Furthermore, Petitioner testified, under oath, that no one threatened her, forced her, or coerced her into entering her guilty plea.

Because this Court scrupulously followed the requirements of Rule 11 of the Federal Rules of Criminal Procedure, Petitioner is bound by the statements that she made in response to the Court's inquiry. And, notably, despite this Court instructing Petitioner to interrupt the proceedings should she have any questions or need to raise any issues, Petitioner never mentioned to this Court that anyone, including her counsel, pressured her into entering her guilty plea.

Accordingly, Petitioner's guilty plea is deemed valid as there is no evidence that Petitioner's counsel, or anyone else for that matter, pressured Petitioner to plead guilty. The record is simply devoid of any evidence that Petitioner's guilty plea was not entered voluntarily and intelligently.

Given the circumstances of Petitioner's case and taking into consideration the entirety of the record before it, this Court finds that Petitioner cannot prove that her counsel's performance, with respect to Petitioner entering her guilty plea of her own free will, was objectively, professionally unreasonable. Consequently, there is no reason to analyze whether, but for Petitioner's counsel's deficient performance, Petitioner still would have entered a guilty plea.

Given this discussion, this Court finds that Petitioner has failed to demonstrate that her counsel's performance fell below the objectively reasonable standard with respect to her first ground for relief. There is no evidence that Petitioner's counsel failed to review discovery material or that Petitioner's counsel pressured her into entering a guilty plea.

### c. Petitioner's assertions of innocence

Despite voluntarily entering her guilty plea, and never previously asserting her innocence to this Court, Petitioner now, in her post-sentence motions, attempts to argue that she is innocent of all charges against her and that she maintained her innocence throughout all proceedings against her. (*See* Pet'r's Suppl. Mem. 2, ECF No. 88; Pet'r's Reply 9-11, ECF No. 93.) Seemingly, Petitioner is now asserting her innocence in an attempt to demonstrate that either there is a reasonable probability that but for her counsel's objectively, professionally unreasonable performance, she would not have pled guilty – the second prong of the ineffective assistance of counsel test – or that her guilty plea was not voluntary.

Despite Petitioner's recent, post-sentencing assertions that she is innocent, Petitioner's sworn statements to the Court "carry a strong presumption of truthfulness." *United States v. Rennick*, 219 F. App'x 486, 489 (6th Cir. 2007) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Furthermore, Petitioner's guilty plea "serves as an admission that [s]he is not innocent of the crimes charged." *Luster v. United States*, 168 F.3d 913, 916 (6th Cir. 1999) (citing *United States*

*v. Skinner*, 25 F.3d 1314, 1316 (6th Cir. 1994)). *See also United States v. Ford*, 15 F. App'x 303, 309 (6th Cir. 2001) (stating "a declaration of guilt carries with it a presumption of truthfulness that binds a defendant") (citing *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1985)).

Therefore, Petitioner's mere assertion of innocence, without the support of a substantial record, is insufficient to overturn a valid guilty plea. *See Everard v. United States*, 102 F.3d 763, 766 (6th Cir. 1996) (quoting *United States v. Ludwig*, 972 F.2d 948, 951 (8th Cir. 1992)). Because, Petitioner's "statements at a plea hearing should be regarded as conclusive [as to the truth and accuracy] in the absence of a believable, valid reason justifying a departure from the apparent truth of those statements." *United States v. Owens*, 215 F. App'x 498, 502 (6th Cir. 2007) (quoting *United States v. Cinnamon*, 112 F. App'x 415, 419 (6th Cir. 2004) (alteration in original) (internal quotation marks omitted)). In fact, Petitioner's "post plea claims of innocence mock [her] courtroom declarations of guilt under oath." *United States v. Goodloe*, 393 F. App'x 250, 255 (6th Cir. 2010) (quoting *United States v. Mise*, 27 F. App'x 408, 414 (6th Cir. 2001) (internal quotation marks omitted)).

Despite having opportunities to speak candidly to this Court at both her change of plea hearing and her sentencing hearing, Petitioner never asserted her innocence with respect to the charges against her. In fact, not only did Petitioner voluntarily plead guilty to the charges against her, but according to both counsel for the government and Petitioner's counsel, Petitioner voluntarily provided the government with useful and specific information regarding the conspiracy in which Petitioner was involved. In addition, immediately prior to this Court sentencing Petitioner, Petitioner apologized for her behavior, accepted responsibility for her actions, and stated that she stood willing to accept her punishment.

Therefore, regardless of Petitioner's motivation to suddenly assert her innocence, and although this issue likely need not be addressed at all since Petitioner has failed to prove that her counsel's performance was objectively, professionally unreasonable, this Court finds Petitioner's recent assertions of innocence do not change the above analysis that Petitioner's counsel performed effectively, and that Petitioner's guilty plea was entered voluntarily and intelligently.

Accordingly, Petitioner's first ground for relief lacks merit and is denied.

2. *Ground Two – Extraordinary Efforts by Counsel to Elicit an Admission of Guilt*

For her second ground for relief, Petitioner states that her counsel was ineffective because he engaged in "[e]xtraordinary efforts" at her plea hearing to elicit a guilty plea. (Pet'r's Mot. to Vacate 4, ECF No. 70.) In support of this ground, Petitioner states that her counsel failed to defend her against the charges against her and failed to counter the government's proposed plea offer. (*Id.*)

First, and foremost, Petitioner's claims that her counsel was ineffective because he coerced her guilty plea are unfounded. As fully discussed *supra*, Petitioner's guilty plea was made voluntarily and intelligently, rendering it a valid guilty plea. Therefore, once again, there is no evidence in the record before this Court that Petitioner's counsel pressured Petitioner to plead guilty. Petitioner cannot prove that her counsel's performance, with respect to Petitioner entering her guilty plea of her own free will, was objectively, professionally unreasonable.

As part of her second ground for relief, Petitioner makes general allegations that her counsel was ineffective because he failed to defend her and failed to negotiate the plea agreement proposed by the government. (*See also* Pet'r's Suppl. Mem. 2, ECF No. 88; Pet'r's Reply 9-10, ECF No. 93.) As stated previously, "[t]he constitutional right to counsel 'extends to the plea-bargaining process.'" *Ugochukwu v. United States*, No. 17-3073, 2018 U.S. App. LEXIS 10756, at *3 (6th

Cir. Apr. 26, 2018) (quoting *Lafler v. Cooper*, 566 U.S. 156, 162 (2012)). Therefore, pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984), as fully set forth *supra*, in order for Petitioner to demonstrate that her counsel's performance was ineffective with respect to defending her and during negotiations throughout the plea-bargaining process, Petitioner must demonstrate that her counsel's performance was objectively, professionally unreasonable ***and*** that there is a reasonable probability that but for her counsel's objectively, professionally unreasonable performance, she would not have entered a guilty plea.

Petitioner's unsupported, general accusations once again fall short of demonstrating that her counsel's performance was objectively, professionally unreasonable. The record is clear that Petitioner, her counsel, and counsel for the government engaged in active plea negotiations and consistent communication regarding Petitioner's case. In addition, after entering into her written plea agreement, Petitioner affirmed to this Court, under oath, that she fully discussed the written plea agreement with her counsel and that she was satisfied with his performance. Furthermore, Petitioner's written plea agreement, as negotiated by her counsel, contained maximum sentencing guideline reduction computations because Petitioner substantially assisted the government with respect to the conspiracy in which she was involved. Finally, despite having the opportunity to raise any issues to this Court, Petitioner never mentioned any concern regarding her counsel's performance during plea negotiations.

Once again, this Court finds that Petitioner has failed to demonstrate that her counsel's performance during the plea-bargaining process and while she entered her guilty plea fell below the objectively reasonable standard. There is simply no evidence contained in the record before this Court that Petitioner's counsel engaged in "[e]xtraordinary efforts" to elicit a guilty plea from Petitioner, that Petitioner counsel failed to defend her in any way, or that Petitioner's counsel failed

to negotiate Petitioner's plea agreement. Therefore, it is unnecessary for this Court to engage in further analysis to determine whether there is a reasonable probability that but for her counsel's objectively, professionally unreasonable performance, she would not have entered a guilty plea.

Consequently, Petitioner's second ground for relief lacks merit and is denied.

   3.   *Ground Three – Failure to Investigate Petitioner's Competency*

For her third ground for relief, Petitioner states that her counsel was ineffective because he failed to investigate Petitioner's competency before she entered into a plea agreement. (Pet'r's Mot. to Vacate 4, ECF No. 70.) In support of this ground, Petitioner states that since January 2016 she was "seeing a mental health doctor for severe depression, stress and panic attacks." (*Id.*)

The standard of competency to plead guilty is the same as the standard of competency to stand trial. *Godinez v. Moran*, 509 U.S. 389, 398 (1993) (rejecting the notion that competency to plead guilty is measured by a higher standard than competency to stand trial). The standard, therefore, is whether Petitioner had "sufficient present ability to consult with [her] lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against [her]." *Id.* at 396 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam) (internal quotation marks omitted)). This standard "seeks to ensure that [Petitioner] has the capacity to understand the proceedings and to assist counsel." *Id.* at 402.

Given this framework, the bar for incompetency is particularly high. *United States v. Pitts*, No. 16-2787, 2017 U.S. App. LEXIS 12019, at *9 (6th Cir. 2017) (quoting *United States v. Miller*, 531 F.3d 340, 350 (6th Cir. 2008)). However, "mental disease or deficiency alone does not establish that a criminal defendant is incompetent." *Doyle v. United States*, No. 91-3839, 1992 U.S. App. LEXIS 1684, at *3 (6th Cir. 1992).

With respect to a court's duty regarding competency, a "district court has not only the prerogative, but the duty, to inquire into a defendant's competency whenever there is 'reasonable cause to believe' that the defendant is incompetent to stand trial." *United States v. White*. 887 F.2d 705, 709 (6th Cir. 1989). *See also Godinez v. Moran*, 509 U.S. 389, 401 n.13 (1993) (agreeing that "a competency determination is necessary only when a court has reason to doubt the defendant's competence").

In a post-conviction setting, such as in the instant matter, Petitioner "has the burden of proving that [she] was not mentally competent to enter [her] plea." *Long v. United States*, No. 97-3609, 1998 U.S. App. LEXIS 31359, at *8 (6th Cir. 1998) (citing *Conner v. Wingo*, 429 F.2d 630, 639 (6th Cir. 1970)). Petitioner "must produce facts that positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to [her] actual competency during the guilty plea hearing." *Id.* at *8-9 (citing *Carter v. Johnson*, 131 F.3d 452, 460 (5th Cir. 1997)).

Petitioner spends a considerable amount of time in her supplemental memoranda discussing her mental health and her assertions that she was incompetent either when she pled guilty, at the time she was sentenced, or both despite the fact that her original Motion to Vacate only alleges that her counsel was ineffective for failing to investigate her competency before she entered into her plea agreement. (*See* Pet'r's Suppl. Mem., ECF No. 88; Pet'r's Third Suppl. Mem., ECF No. 92; Pet'r's Reply, ECF No. 93.)

Petitioner asserts that at the time she pled guilty she was suffering from "significant psychological issues" and had been treated by a mental health professional for more than a year before signing her written plea agreement rendering her incompetent to sign her written plea agreement or participate meaningfully in her plea hearing. (Pet'r's Suppl. Mem. 2-3, ECF No. 88. *See also* Pet'r's Third Suppl. Mem. 2, ECF No. 92 (outlining the mental health conditions for

which Petitioner had been diagnosed and the medication she had been prescribed for approximately one year prior to Petitioner's guilty plea).) Subsequent to her first supplemental memorandum, Petitioner asserts that she suffered from auditory and visual hallucinations coupled with suicidal ideation and therefore was incompetent during her sentencing. (Pet'r's Third Suppl. Mem. 3-4, ECF No. 92.)

What is problematic, however, is throughout Petitioner's arguments regarding her competency, her facts and arguments shift and are only consistent in their inconsistency. (*See, e.g.*, *id.* at 5 (stating that Petitioner's past mental health issues coupled with hallucinations and suicidal ideations made her incompetent to "accept the guilty plea negotiated by counsel" despite alleging only a page earlier that the hallucinations affected her only during sentencing); *id.* at 6 (speculating that Petitioner's "on-going mental health status" rendered Petitioner "likely incompetent" during sentencing). *See also* Pet'r's Reply 2-7, ECF No. 93 (repeating word-for-word Pet'r's Third Suppl. Mem. 2-6, ECF No. 92).)

Of particular note, however, are the facts contained in the record before this Court. First, at the time of Petitioner's arrest, Petitioner had not seen her psychiatrist since June 27, 2016, an elapse in treatment of almost six entire months. (Sentencing Mem. Ex. F, ECF No. 57-6 (confirming, from Petitioner's psychiatrist, the psychiatric conditions Petitioner was diagnosed with and the medication she was prescribed as of her last clinic visit prior to her guilty plea, which took place on June 27, 2016).) In addition, Petitioner did complain of experiencing auditory and visual hallucinations in early 2017, but notably only *after* Petitioner had entered her guilty plea. (Tr. Sentencing Hr'g 11:15-17, ECF No. 77. *See also* Sentencing Mem. Ex. G, ECF No. 57-7 *See also* Sentencing Mem. Ex. G, ECF No. 57-7 ("On March 30, 2017 Ms. Briggs reported feeling very depressed and having been experiencing visual and auditory hallucinations as well as paranoid

thoughts ***in the last 4 weeks***. She was having suicidal thoughts at times. . . . She called the Kaiser Behavioral Health Care Member Help Line on April 1, 2017 expressing intense suicidal ideation.") (***emphasis added***).)

With respect to Petitioner's counsel's performance, he submitted a number of records to this Court from Petitioner's mental health care providers, none of which flagged Petitioner as incompetent. (*See* Sentencing Mem. Ex. F, ECF No. 57-6; Sentencing Mem. Ex. G, ECF No. 57-7; Sentencing Mem. Ex. H, ECF No. 57-8; Sentencing Mem. Ex. I, ECF No. 57-9.) Finally, Petitioner's counsel testified, through an affidavit, that he was aware of Petitioner's mental health conditions but when Petitioner was asked directly "if her mental state was interfering with her ability to understand the proceedings or [counsel's] conversations with her, [Petitioner] said that she was fully aware of what was going on and the process that she was undergoing." (Thomarios Aff. ¶ 4, ECF No. 91-1.)

Petitioner neither points to anything in the record, nor provides any additional evidence in her written submissions to this Court that rises to the level of "facts that positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to [her] actual competency." *Long v. United States*, No. 97-3609, 1998 U.S. App. LEXIS 31359, at *8-9 (6th Cir. 1998). Furthermore, Petitioner fails to direct this Court to any moment contained in the record where Petitioner was unable to consult with her counsel "with a reasonable degree of rational understanding" or where Petitioner lacked a "rational as well as factual understanding of the proceedings against" her. *Godinez v. Moran*, 509 U.S. 389, 396 (1993).

In fact, the record signifies the contrary of Petitioner's assertions. Petitioner engaged in a series of interactions with her counsel, counsel for the government, and this Court without difficulty. Petitioner coherently provided the government with detailed and specific information regarding

the conspiracy in which she was involved. Petitioner made informed statements in response to this Court's inquiry in her change of plea hearing and she also provided a coherent personal statement at her sentencing hearing. Petitioner never once expressed to this Court that she did not have a rational or factual understanding of the charges against her, or that she could not meaningfully engage with her counsel due to mental health concerns. Therefore, there was no rational reason for this Court or Petitioner's counsel to doubt Petitioner's competency.

Because this ground for relief is raised under an ineffective assistance of counsel veil, Petitioner must demonstrate that her counsel's performance, with respect to her competency was objectively, professionally unreasonable. Given the entirety of the above discussion, and the entirety of the record before this Court, Petitioner's claim that her counsel was ineffective for not investigating her competency is unfounded. Because Petitioner's counsel's performance was not deficient, this Court will not address whether there is a reasonable probability that but for her counsel's objectively, professionally unreasonable performance, she would not have entered a guilty plea.

This Court finds that Petitioner's third ground for relief lacks merit and is denied.

    4.   *Ground Four – Failure to Withdraw Petitioner's Plea*

Petitioner's final ground for relief states that her counsel was ineffective because there was a "[f]ailure to understand the consequences of with drawing [sic] a plea." (Pet'r's Mot. to Vacate 5, ECF No. 70.) In support of this ground, Petitioner states that after she entered her guilty plea she asked her attorney to withdraw it "several times" and to transfer her case, but her attorney refused to honor her requests. (*Id.*) She goes further and states that her counsel did not tell her that she could ***not*** withdraw her plea or what the consequences would be if she did withdraw her plea. (*Id.*)

Pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B), a defendant may withdraw her guilty plea after a court accepts the plea but before sentencing if the defendant "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). When determining whether the reasons for requesting that a guilty plea be vacated are "fair and just," a court may consider "the amount of time that elapsed between the plea and the motion to vacate, the presence (or absence) of a valid reason for this failure to present the grounds for withdrawal at an earlier point in the proceedings, and whether the movant has asserted [her] legal innocence." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (citing *United States v. Spencer*, 836 F.2d 236, 238-39 (6th Cir. 1987)).

The purpose of Fed. R. Crim. P. 11(d)(2)(B) is "to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant 'to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.'" *Id.* (quoting *United States v. Carr*, 740 F.2d 339, 345 (5th Cir. 1984)).

To be clear, the matter before this Court is whether Petitioner's counsel was ineffective for failing to withdraw her guilty plea. While Petitioner asserts that she asked her counsel several times to withdraw her guilty plea, this issue was raised for the first time in Petitioner's post-sentence Motion to Vacate, which was filed a little over seven months after Petitioner entered her valid guilty plea, and almost two months after Petitioner was sentenced. One hundred seventy-five days elapsed between Petitioner entering her valid guilty plea and this Court sentencing Petitioner. Not once during those one hundred seventy-five days did Petitioner provide this Court any indication that she wished to withdraw her guilty plea. The record is patently devoid of any communication from Petitioner requesting that her guilty plea be vacated.

Furthermore, Petitioner addressed the Court during her sentencing hearing, and did not mention that she had requested a withdraw of her guilty plea that went unanswered – in fact, she stated that she stood remorseful and was prepared to accept her punishment. Despite this Court warning Petitioner that she could not withdraw her guilty plea should she be displeased with her sentence, that appears to be precisely what Petitioner is attempting to do.

Given the clear record before this Court, Petitioner cannot demonstrate that her counsel's performance was objectively, professionally unreasonable with respect to requesting a withdrawal of Petitioner's validly entered guilty plea because there is no indication anywhere in the record that she actually requested a withdrawal of her plea.

But, even if this Court accepts as true Petitioner's claim that she requested her attorney withdraw her guilty plea and he failed to do so or that Petitioner's counsel failed to educate her regarding the consequences of withdrawing a plea, Petitioner must also demonstrate that there is a reasonable probability that but for her counsel's objectively, unreasonable performance the outcome of the proceedings would have been different.

Petitioner has not provided this Court "fair and just" reasons for requesting the withdrawal of her guilty plea. As analyzed previously, Petitioner's guilty plea was entered voluntarily and intelligently to this Court. When provided the opportunities, Petitioner did not ask this Court any or bring any issues to this Court's attention. In between pleading guilty and this Court sentencing Petitioner, she did not communicate a desire to withdraw her guilty plea to this Court. Prior to her post-sentence motion practice, Petitioner did not maintain her innocence of the charges against her. Finally, Petitioner has failed to provide a single valid reason for her failure to request the withdrawal of her guilty plea until this protracted period after entering her guilty plea and this Court sentencing her.

Given the entirety of the record before this Court and taking into consideration the facts and circumstances of this case, Petitioner cannot demonstrate that her counsel's performance was objectively, professionally unreasonable with respect to requesting a withdrawal of Petitioner's guilty plea. However, even if Petitioner's allegations against her counsel are accepted as true, Petitioner cannot demonstrate that there is a reasonable probability that, but for her counsel's objectively, professionally unreasonable performance, this Court would have allowed for the withdrawal of Petitioner's validly entered guilty plea.

Accordingly, Petitioner's fourth and final ground for relief lacks merit and is denied.

### B. Jail Credit

Despite this Court denying Petitioner's Motion for Jail Credit, Petitioner's Second Supplemental Memorandum in Support of her Motion to Vacate addresses this issue again. (Pet'r's Second Suppl. Mem., ECF No. 89.) In addition, in Petitioner's Reply, she argues that because the government did not address this issue in its Response in Opposition to Petitioner's Motion to Vacate, her request for jail credit should be granted. (Pet'r's Reply 1-2, ECF No. 93.)

As an initial matter, Petitioner's request for sentencing credit within the context of a 28 U.S.C. § 2255 motion is inappropriate. This Court does not have authority, under 28 U.S.C. § 2255 to provide sentencing credit to Petitioner, because this type of claim challenges the execution of a sentence, rather than challenging the imposition of a sentence as allowed by 28 U.S.C. § 2255. *Dorsey v. United States*, 1995 U.S. App. LEXIS 10374, at *5 (6th Cir. May 5, 1995). *See also United States v. Jalili*, 925 F.2d 889, 893-94 (6th Cir. 1991). "The Bureau of Prisons (BOP), and not the district court, is authorized to grant a defendant credit toward [her] sentence for time served in official detention before [her] sentence begins to run." *Dorsey* at *5 (citing *United States v. Wilson*, 503 U.S. 329, 333-34 (1992)). *See also United States v. Crozier*, 259 F.3d 503, 520 (6th

Cir. 2001) ("Power to grant credit for time served lies solely with Attorney General and Bureau of Prisons.").

Regardless, Petitioner's claim for sentencing credit is frivolous. Pursuant to 18 U.S.C. § 3585(b), a defendant is "given credit toward the service of a term of imprisonment for any time [she] has spent in official detention prior to the date the sentence commences." 18 U.S.C.S. § 3585(b) (LexisNexis 2018). The term "official detention" only occurs when a defendant is "committed to the custody of the Attorney General; a defendant admitted to bail on restrictive conditions . . . is 'released.'" *Reno v. Koray*, 515 U.S. 50, 57 (1995). Despite the fact that those released individuals may be subject to restrictive conditions, the important distinction between detained individuals and released individuals is that detained individuals are always under the control of the Bureau of Prisons. *Id.* at 62-63.

In the instant matter, Petitioner was released on bond subject to restrictive conditions between December 23, 2016 and her sentencing. Therefore, Petitioner was released, not officially detained, and her Motion for Jail Credit is meritless and once again denied. *See, e.g.*, *Stewart v. Merlak*, 2017 U.S. Dist. LEXIS 90976, at *4 (N.D. Ohio June 12, 2017) (restrictive house arrest is not "official detention"); *Chapman v. Warden, Fed. Corr. Inst. Elkton*, 2015 U.S. Dist. LEXIS 84885, at *3 (N.D. Ohio June 30, 2015) (bond conditions of home confinement with electronic monitoring does not entitle a defendant to sentence credit); *Brown v. Farley*, 2012 U.S. Dist. LEXIS 129719, at *7-11 (N.D. Ohio Sept. 12, 2012) (residing at a halfway house or community treatment center as conditions of release is not official detention); *Sherman v. United States*, 2008 U.S. Dist. LEXIS 117174, at *12 (N.D. Ohio July 16, 2008) (pre-trial bond release is not official detention).

**C. Petitioner's Urgent Motion**

On July 26, 2018, Petitioner filed an "Urgent Motion" requesting that she be able to supplement her original Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence due to newly discovered evidence. (Pet'r's Urgent Mot. for Leave to Suppl., ECF No. 95.) However, this urgent motion does not provide any newly discovered evidence. Rather, it rehashes Petitioner's arguments regarding competency. (*Id.*)

Therefore, because the issue of competency was fully analyzed and disposed *supra*, this urgent motion is meritless and is denied.

## IV.    CONCLUSION

For the foregoing reasons, Petitioner Dianna Briggs' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence is hereby DENIED. In addition, Petitioner's Urgent Motion for Leave to Supplement her original Motion to Vacate is hereby DENIED. This Order renders Petitioner's Motion for Ruling MOOT.

Furthermore, this Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith and there is no basis upon which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

IT IS SO ORDERED.

DATE: March 18, 2019                             /s/ John R. Adams
                                                 Judge John R. Adams
                                                 UNITED STATES DISTRICT COURT